UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NELIDA NARVAEZ, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NANCY A. BERRYHILL, Acting ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br>  ) | Civil Action No. <br> 17-12580-FDS |

**MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION TO REVERSE AND DEFENDANT'S MOTION TO AFFIRM DECISION OF COMMISSIONER**

**SAYLOR, J.**

This is an appeal of a final decision of the Commissioner of the Social Security Administration ("SSA"). On May 20, 2016, the ALJ issued a decision concluding that plaintiff Nelida Narvaez had been disabled since May 1, 2016, and not earlier. The SSA Appeals Council declined review on June 2, 2017. Narvaez then filed an action with this Court.

Narvaez seeks reversal of the Commissioner's decision on four grounds. The Commissioner has moved to affirm the decision. For the reasons stated below, the decision will be affirmed.

## I. Background

### A. Factual Background

#### 1. Personal History

Nelida Narvaez was 45 years old on June 7, 2012, the date she contends that her disability began. (A.R. 542). She graduated from high school and attended two years of college.

(A.R. 555). She has been unemployed since August 2012, when she stopped working as a data clerk specialist at the New Bedford Housing Authority and part-time as a cashier at a Shaw's Supermarket. (A.R. 545). She had previously worked as a cashier, a receptionist, a file clerk, and a customer service representative. (A.R. 581).

### 2. **Medical History**

Narvaez has a lengthy medical record. She has reported pain in her back since 1991 and has received treatment for a variety of physical and mental health problems, including chronic pain syndrome. (A.R. 875).[1]

In late 2011, Narvaez complained of back pain to her primary-care provider, Dr. Anne Marie Treadup. (A.R. 829). Dr. Treadup referred her to a physiatrist, Dr. Sergey Wortman, for pain management. (A.R. 730).

Dr. Wortman began seeing Narvaez on an approximately monthly basis. He first examined her in January 2012. (*Id.*). He noted three impressions at that visit: (1) that she suffered from bilateral carpal tunnel syndrome, (2) that she had possible lumbar and cervical spondylosis, and (3) that she had possible localized lumbar and cervical disc protrusions/herniations. (A.R. 730-31). Dr. Wortman prescribed Percocet (a painkiller containing a combination of an opioid and acetaminophen) and Mobic (a nonsteroidal anti-inflammatory drug). (*Id.*).

In the spring of 2012, Narvaez received an x-ray and an MRI of her back. (A.R. 719, 727). Dr. Wortman noted that the tests revealed evidence of mild spondylosis, a small disc protrusion, and facet joint hypertrophy in her spine. (A.R. 719-20, 727-28). Dr. Wortman also

---

[1] Narvaez's mental-health issues will not be addressed in detail in this opinion, as they are not central to the decision.

had Narvaez undergo a nerve conduction study, which revealed evidence of moderate carpal tunnel syndrome. (A.R. 719-20).[2]

In June 2012, after Narvaez reported worsening pain, Dr. Wortman prescribed 100 mg/day of Lyrica (a nerve pain medication). (A.R. 759-60).

In July and August 2012, Narvaez complained of knee pain to Dr. Wortman.

In September 2012, Narvaez received x-rays of both of her knees. The x-ray of the left knee was normal, and the x-ray of the right knee revealed only minimal degenerative changes. (A.R. 887).

Narvaez continued to take various drugs for pain, including Percocet, Neurontin (a nerve pain medication), and Mobic. In November 2012, Dr. Treadup saw Narvaez and noted that she felt that "a lot of [her] pain [was] from . . . narcotics . . . and narcotic withdrawal." (A.R. 873). Dr. Treadup recommended that she "come off of narcotics or talk to Dr. Wortman about" a prescription for a long-acting narcotic. (*Id.*). Later that month, Dr. Wortman prescribed 50 mg/day of Oxycontin and continued her on Neurontin and Mobic. (A.R. 884-85).

Narvaez saw Dr. Wortman a month later, on December 19, 2012. She continued to complain of pain, and Dr. Wortman increased her Oxycontin prescription to 60 mg/day. (A.R. 881-82).

In January 2013, Narvaez received an MRI of her left knee. The radiologist noted impressions of mild runner's knee and a minor joint effusion. (A.R. 879). Dr. Wortman noted that the MRI revealed mild osteoarthritis. (A.R. 877).

Dr. Wortman continued to see Narvaez regularly. Although she frequently complained of pain, she repeatedly refused Dr. Wortman's suggestions that she receive cortisone injections to

---

[2] Narvaez also visited a rheumatologist, who diagnosed fibromyalgia. (A.R. 752).

help manage it. (A.R. 1354).

On October 13 and/or 14, 2014, Narvaez visited the emergency room for bilateral knee pain. An examining physician's assistant recommended icing the area and using an Ace bandage for support. She also prescribed Motrin for pain and Percocet for severe pain, as well as a cane to assist in walking. (A.R. 1371-72).

In May 2015, Narvaez tore the medial meniscus in her left knee. (A.R. 1331). She underwent arthroscopic surgery on June 23, 2015. By October 2015, she was apparently able to walk normally, except on her heels or toes. (A.R. 1380).

## II. Procedural History

Narvaez filed a claim for disability benefits in August 2012. (A.R. 234). At that time, she contended that she was suffering from, among other things, a disc protrusion, fibromyalgia, carpal tunnel syndrome, and rheumatoid arthritis. She contended that her disability had begun on June 7, 2012. (*Id.*).

On November 16, 2012, the SSA concluded that Narvaez was not disabled. (A.R. 324-27). She filed a request for reconsideration. (A.R. 332-33). On April 2, 2013, the SSA concluded that its earlier decision was "proper under the law." (A.R. 334).

Narvaez requested a hearing. The SSA granted her request and an ALJ held a hearing on August 15, 2014. (A.R. 177-212). On September 3, 2014, the ALJ found her to be not disabled. (A.R. 437). She requested review of the decision. (A.R. 436).

On October 23, 2015, the SSA Appeals Council vacated the ALJ's finding and remanded Narvaez's case to a different ALJ. (A.R. 320). The new ALJ held a hearing on April 11, 2016. (A.R. 213-233).

Narvaez and her attorney appeared at the April 2016 hearing by video. (A.R. 215). She testified about her medical history and a vocational expert testified that she could perform jobs

that were available in the economy. (A.R. 213-233).

On May 20, 2016, the ALJ issued a decision finding that Narvaez became disabled on May 1, 2016. (A.R. 35-52). Under the lower age category (45-49) that Narvaez fell under between her alleged disability onset date of June 7, 2012, and May 1, 2016, the ALJ held that various factors, including her age, education, work experience, and residual functional capacity, supported a finding of "not disabled." However, the ALJ found that Narvaez's advancement into a higher age category (50+) on May 1, 2016 supported a finding of "disabled."

Narvaez requested review of the partial finding of "not disabled," which the Appeals Council denied on June 2, 2017. (A.R. 1-4).

On July 31, 2017, Narvaez filed this action to review the Commissioner's decision. The Commissioner has moved to affirm the decision.

### III. Analysis

#### A. Standard of Review

Under § 205(g) of the Social Security Act, this Court may affirm, modify, or reverse the Commissioner's decision, with or without remanding the case for a rehearing. 42 U.S.C. § 405(g). The ALJ's finding on any fact shall be conclusive if it is supported by "substantial evidence," and must be upheld "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion," even if the record could justify a different conclusion. *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

In applying the "substantial evidence" standard, the Court must bear in mind that it is the province of the ALJ, not the courts, to find facts, decide issues of credibility, draw inferences from the record, and resolve conflicts of evidence. *Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). Reversal is warranted only if the ALJ committed a legal or factual

5

error in evaluating the claim, or if the record contains no "evidence rationally adequate . . . to justify the conclusion" of the ALJ. *Roman-Roman v. Comm'r of Soc. Sec.*, 114 F. App'x 410, 411 (1st Cir. 2004); *see also Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). Therefore, "[j]udicial review of a Social Security claim is limited to determining whether the ALJ used the proper legal standards and found facts based on the proper quantum of evidence." *Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 655 (1st Cir. 2000).

### B. Standard for Entitlement to Disability Benefits

In order to qualify for SSI benefits, the claimant must demonstrate that he or she is "disabled" within the meaning of the Social Security Act. The Social Security Act defines a "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to prevent the claimant from performing not only his or her past work, but also any substantial gainful work existing in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1560(c)(1).

An applicant's impairment is evaluated under a five-step analysis set forth in the regulations promulgated under the statute. *See* 20 C.F.R. § 404.1520. The First Circuit has described the analytical sequence as follows:

> First, is the claimant currently employed? If he is, the claimant is automatically considered not disabled.
>
> Second, does the claimant have a severe impairment . . . mean[ing] an impairment 'which significantly limits his or her physical or mental capacity to perform basic work-related functions[?]' If the claimant does not have an impairment of at least this degree of severity, he is automatically considered not disabled.
>
> Third, does the claimant have an impairment equivalent to a specific list of impairments contained in . . . Appendix 1 [of the Social Security regulations]? If the claimant has an impairment of so serious a degree of severity, the claimant is

automatically found disabled. . . . If, however, his ability to perform basic work-
related functions is impaired significantly (test 2) but there is no 'Appendix 1'
impairment (test 3), the [ALJ] goes on to ask the fourth question:

Fourth, does the claimant's impairment prevent him from performing work of the
sort he has done in the past? If not, he is not disabled. If so, the agency asks the
fifth question.

Fifth, does the claimant's impairment prevent him from performing other work of
the sort found in the economy? If so, he is disabled; if not, he is not disabled.

*Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6-7 (1st Cir. 1982).

The burden of proof is on the applicant as to the first four inquiries. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the [ALJ] may require."). If the applicant has met his or her burden as to the first four inquiries, then the burden shifts to the Commissioner to present "evidence of specific jobs in that national economy that the applicant can still perform." *Freeman v. Barnhart*, 274 F.3d 606, 608 (1st Cir. 2001). In determining whether the applicant is capable of performing other work in the economy, the ALJ must assess the applicant's RFC in combination with vocational factors, including the applicant's age, education, and work experience. 20 C.F.R. § 404.1560(c).

### C. The ALJ's Findings

In evaluating the evidence, the ALJ conducted the five-part analysis called for by Social Security Act regulations.

At step one, the ALJ found that Narvaez has not engaged in substantial gainful activity during the period since her alleged onset date of June 7, 2012. Although she lost her job in August 2012, in the interim period she was receiving sick pay. (A.R. 43).

At step two, the ALJ found that since the alleged onset date, Narvaez's lumbar spine disc protrusion, right shoulder arthritis, carpal tunnel syndrome, knee arthritis status post left knee

7

surgery, Achilles tendinitis, fibromyalgia, and variously diagnosed depressive, anxiety, and personality disorders were severe impairments under 20 C.F.R. § 404.1520(c). (A.R. 43). He found that she denied shortness of breath, cough or wheezing, and no hospitalization or non-routine treatment for the asthma. (*Id.*). He further found that treatment records showed subclinical hyperthyroidism through January 2013, and that diagnostic testing revealed a history of mild gastritis. (*Id.*). For these reasons, he found that while the record showed routine medical treatment for asthma, diverticulitis, and thyroid disorder, those impairments did not impose more than minimal functional limitations and were non-severe. (*Id.*).

At step three, the ALJ found that Narvaez did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled the severity of an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (A.R. 43-45). The ALJ evaluated her severe impairments under listings 1.00 (musculoskeletal system) and 11.00 (neurological disorders) and concluded that the evidence did not support a finding that met the severity listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (*Id.*). As to musculoskeletal systems, the ALJ found that her lumbar spine disc protrusion was small and without accompanying significant stenosis, that tandem gait was observed in October 2015, that there is no evidence of fine finger difficulties, and that she reported performing activities following the alleged onset date, such as shoveling snow. (A.R. 43-44). As to mental disorders, the ALJ found that she had moderate limitations in all four "paragraph B" criteria (B1: Understand, remember, or apply information; B2: Interact with others; B3: Concentrate, persist, or maintain pace; B4: Adapt or manage oneself). (A.R. 44). However, he found that she did not have marked or extreme limitation in any of the "paragraph B" criteria, as shown by absence of partial or inpatient psychiatric hospitalizations in the medical record and continued reports that she performed household chores such as cooking, laundry,

8

shopping, and shoveling snow. (*Id.*). The ALJ found that the mental impairments do not satisfy the paragraph "C" criteria, as shown by absence of partial or inpatient psychiatric hospitalizations in the medical record and continued reporting of performing household chores such as cooking, laundry, shopping, and shoveling snow. (*Id.*). The ALJ found that her global assessment of functioning scores were in the moderate scoring range, which supported the findings of intact memory and concentration and her reported household activity. (*Id.*).

The ALJ gave little weight to the opinion of a nurse practitioner that Narvaez's depression resulted in the loss of her job, stating that the opinion was not from an acceptable medical source and that it was less of an opinion as to her mental limitations than a reason as to why she left her job. (*Id.*). The ALJ also gave little weight to the opinion of a friend that her depression affected her ability to work due to panic attacks, decreased concentration and absences. (*Id.*). He found that the opinion was not from acceptable medical sources and was inconsistent with the record, particularly her continued reports of household activity. (*Id.*).

At step four, the ALJ determined that since June 7, 2012, Narvaez had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a), with the following limitations: a sit/stand option where she may stand and stretch for five minutes per hour; perform no more than occasional postural maneuvers; avoid squatting and climbing ladders/ropes/scaffolds; grasp and twist no more than occasionally; perform jobs without constant supervision or tandem work; interact with coworkers and the public on no more than a superficial basis; and perform no more than unskilled tasks. (A.R. 45-46). The ALJ found that she could carry out and remember unskilled instruction and use judgment in basic unskilled work situations and deal with routine work-setting changes. (A.R. 45-46).

In considering Narvaez's symptoms, the ALJ followed a two-step process. In step one,

he found that the medical evidence does not suggest an impairment that could reasonably be expected to produce the pain and physical symptoms that she claimed. (A.R. 46). He found that spine imaging showed that the disc protrusion is small and without significant stenosis or impingement. (A.R. 47). He further found that she was offered injections for her back but declined treatment; that recent treatment records did not show reports of pain and symptoms; and that she alleges she was prescribed a cane, but the medical records contain no such indication. (*Id.*). In step two, the ALJ evaluated how the intensity, persistence, and limiting effects of the symptoms limited her work-related activity. (A.R. 46). He gave great weight to assessments from state agency medical consultants, who found that reduced sedentary range of exertion was supported by the medical evidence of arthritis, pain, carpal tunnel syndrome, knee pain, and left knee surgery in June 2015. (A.R. 48). He found that while her mental-health treatment records show depression, anxiety, varying mood, hallucinations, racing thoughts, and suicidal thoughts, they also show normal memory, concentration, and cognition. (A.R. 47). He found that she admitted to running out of medications at times. (*Id.*). He found that her own admissions to cooking, doing chores, cleaning, doing laundry, socializing with family, driving, shopping, and shoveling snow during the time period do not support her allegations that the symptoms are totally disabling. (A.R. 48). The ALJ gave little weight to the opinion of Dr. Wortman that she could not perform basic sedentary work, as he had not treated her since October 2015 and his opinion was inconsistent with the evidence as a whole. (A.R. 48-49).

     Narvaez's past experience as a data-entry clerk and in telephone sales involved sedentary exertion and semi-skilled work, while her past position as a retail clerk involved light exertion and semi-skilled work, according to the vocational expert. (A.R. 49). Accordingly, the ALJ found that the exertional demands of her past relevant work exceeded her current RFC

limitations to sedentary unskilled work. (*Id.*).

At step five, the ALJ concluded that in the time period between the alleged disability onset date and the date of his decision, and considering Narvaez's age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that she could have performed. (A.R. 50-51). The ALJ relied on the vocational expert's testimony that someone with her same characteristics could have worked in representative occupations such as a table worker (5,125 jobs nationally), surveillance-system monitor (8,830 jobs nationally), and touch-up inspector (1,600 jobs nationally) through the date of the ALJ's decision. (*Id.*). The ALJ considered the fact that the vocational expert's testimony was inconsistent with the information in the Dictionary of Occupational Titles ("DOT"), but found the inconsistency to be explained by the absence of a DOT provision for a sit/stand option provision at the sedentary level. (*Id.*). Instead, he credited the testimony because she had knowledge of the DOT and extensive knowledge and decades of experience in the vocational field. (*Id.*).

The ALJ also found that on May 1, 2016, Narvaez's age category changed to that of an individual closely approaching advanced age. (A.R. 48) The ALJ came to this decision by applying the age categories, and by considering evidence, such as her upcoming knee surgery, that indicated progressive symptoms despite treatment. (A.R. 49-50). The ALJ cited 20 C.F.R. § 404.1563, § 416.963, and *Preval v. Colvin*, Civil Action No. 14-14545-GAO, D. Mass. Sep. 30, 2015, to support that decision. (A.R. 50). The ALJ then found that beginning on May 1, 2016, the date her age category changed, there were no jobs that exist in significant numbers in the national economy that she could perform, citing 20 C.F.R. § 404.1560(c), § 404.1566, § 416.960(c) and § 416.966. (A.R. 51).

11

In summary, the ALJ found that Narvaez did not suffer from a disability between the alleged onset date of June 7, 2012 and April 31, 2016, under 42 U.S.C. § 216(i) and 42 U.S.C. § 223(d), but became disabled on May 1, 2016, under 42 U.S.C. § 423(d) and 42 U.S.C. § 1382c(a)(3)(A). (A.R. 51).

### D. Narvaez's Objections

Narvaez raises four objections to the ALJ's decision.

#### 1. The Cane Prescription

First, Narvaez objects to the ALJ statement that her medical records "contain no . . . indication" that she had been prescribed a cane during an October 2014 visit to the emergency room. (A.R. 44). She contends that the ALJ's misstatement warrants remand, as evidence of his failure to "consider all evidence in [her] case record" in violation of 20 C.F.R. § 404.1520.

The Commissioner admits that the ALJ's statement was erroneous, but contends that Narvaez has failed to meet the burden required to warrant remand under *Shinseki v. Sanders*, 556 U.S. 396 (2009). In *Sanders*, the court re-iterated that "the party 'that seeks to have a judgment set aside because of an erroneous ruling carries the burden of showing that prejudice resulted'" from the ruling. 556 U.S. at 409 (quoting *Palmer v. Hoffman*, 318 U.S. 109, 116 (1943)).

Because Narvaez has not shown that the ALJ's misstatement caused her any prejudice, the error does not warrant remand. When, as here, the circumstances of the case alone do not make clear that the ALJ's ruling was harmful, the "party seeking reversal . . . must explain why the erroneous ruling caused harm." *Sanders*, 556 U.S. at 410.

Narvaez, the party seeking reversal here, has not met her burden to do so; she offers no explanation as to how the mistake caused her harm. Indeed, her brief offers nothing beyond a mere factual identification of the ALJ's error. Accordingly, she has not met her burden of showing prejudice, and therefore cannot conclude that the error warrants remand.

12

### 2. Snow Shoveling

Narvaez next contends that the ALJ erred in his treatment of a statement she made during a visit with her psychiatrist. In making his decision, the ALJ cited a March 2015 report by her psychiatrist that notes she had relayed recent episodes of mood instability marked by periods of "increased energy" during which she performed activities such as "shoveling . . . snow." (A.R. 1303). That evidence, the ALJ concluded, suggested that she was capable of performing work at that time.

Narvaez appears to contend that the ALJ's treatment of the snow-shoveling evidence violated the requirement of 20 C.F.R. § 404.1520 that he consider "all evidence in [a claimant's] case record" in making his decision. Essentially, she seems to allege that the ALJ failed to consider all the evidence by not mentioning other notes the psychiatrist made in describing the periods of her "increased energy."

Narvaez has not shown that the ALJ failed to consider the other evidence included in the psychiatrist's report. At the outset, it is worth noting that "an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *N.L.R.B. v. Beverly Enterprises-Mass.*, 174 F.3d 13, 26 (1st Cir. 1999). Furthermore, she has provided nothing to suggest that the ALJ did not consider the entirety of the psychiatrist's report. And, in any event, as with the cane prescription, she has not even attempted to show how the ALJ's alleged error caused her prejudice. Accordingly, the second objection does not warrant remand.

### 3. Discounting Dr. Wortman's Opinion

Narvaez next alleges that the ALJ erred by discounting the opinion of her treating physician, Dr. Wortman. She contends that the ALJ was required to give Dr. Wortman's opinion "controlling weight" under 20 C.F.R. § 404.1527.

The ALJ, however, "is not 'obligated automatically to accept [a treating physician's] conclusions." *Moore v. Astrue*, 2013 WL 812486, at *7 (D. Mass. Mar. 2, 2013) (quoting *Guyton v. Apfel*, 20 F. Supp. 2d 156, 167 (D. Mass. 1998)). Instead, the ALJ must only "give good reasons in [his or her] notice of determination or decision for the weight [he or she gives the] treating source's opinion." *Dupras v. Colvin*, 2016 WL 845259, at *7 (D. Mass. Mar. 4, 2016) (quoting 20 C.F.R. § 404.1527(c)(2)).

Here, the ALJ explained in detail his decision to award Dr. Wortman's opinion little weight. After stating that those opinions were "not supported by and inconsistent with the evidence as a whole," the ALJ cited numerous pieces of evidence that refuted Dr. Wortman's conclusions. Accordingly, the ALJ did not err in using his discretion to discount Dr. Wortman's opinion.

### 4. Vocational Testimony

Finally, Narvaez contends that the ALJ erred by failing to ask whether she objected to a vocational expert testifying at her hearing, as she contends is required by section I-2-6-74(B) of the SSA's internal policy manual ("HALLEX"). As an internal policy manual, however, the HALLEX is not binding on the agency. *Justiniano v. Social Security Administration*, 876 F.3d 14, 29 (1st Cir. 2017); *see also Schweiker v. Hansen*, 450 U.S. 785, 789 (1981) (holding that the SSA's internal Claims Manual handbook "has no legal force [] and does not bind the SSA."). Accordingly, the ALJ did not commit reversible error by failing to comply with the SSA's internal policy manual.

## IV. Conclusion

For the foregoing reasons, the motion of defendant to affirm the decision of the Commissioner is GRANTED.

**So Ordered.**

Dated: March 27, 2019

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge